IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:08-CV-00008-FL

| | |
|---|---|
| RASHIDAH H. ABDULLAH, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DUKE UNIVERSITY HEALTH )<br>SYSTEM, INC., )<br>)<br>Defendant. ) | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR TO DISMISS** |

COMES NOW the Plaintiff, in response and opposition to Defendant's Motion to Stay to Compel Arbitration, or to Dismiss, as follows:

**SUMMARY OF PLAINTIFF'S RESPONSE**

Defendant Duke University Health Care System ("Duke") seeks enforcement of a purported arbitration agreement with respect to claims arising out of Plaintiff Rashidah Abdullah's ("Plaintiff") employment as a casual float nurse. However, such agreements are valid only when (a) the purported agreement itself is a valid contract under North Carolina contract law, and (b) Duke itself did not waive any enforceable arbitration agreement that did exist.

There is no enforceable arbitration agreement between Duke and Plaintiff. Duke seeks to take a document that by its own terms is described as an "expression of interest in employment" and turn it into a valid, enforceable arbitration contract.

1

To the extent this document constitutes a contract in any form, any obligation on Plaintiff's part to arbitrate is unenforceable as an illusory promise. Duke *itself* did not agree to submit all disputes regarding Plaintiff's employment to binding arbitration, and additionally reserved for itself an unlimited right to "periodically" amend its grievance policy, or "DRP" – the policy under which Duke now seeks the stay or dismissal of this case.

Further, even if the Court finds that this single sheet of paper is an enforceable contractual agreement to arbitrate, Duke waived the right to enforce that agreement against Plaintiff, given that well prior to Plaintiff filing this action Duke failed to insist on arbitration of Plaintiff's claim for unemployment insurance benefits, and in fact sought a remedy outside arbitration by appealing an adjudicator's decision to grant Plaintiff unemployment benefits.

Finally, Duke provides, as far as Plaintiff can ascertain, no controlling factual or legal authority for its argument that Plaintiff's case, in the event this Court does find that this matter must be submitted to arbitration, must be dismissed instead of merely stayed pending arbitration.

## FACTS

### A. Procedural History

Plaintiff worked for Duke as a casual duty nurse from October 2004 to March 2008. Plaintiff was not subject to a collective bargaining agreement with Duke. Following her termination, Plaintiff filed a claim for unemployment benefits with the Employment Security Commission of North Carolina ("ESC") in addition to filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

On Plaintiff's unemployment claim, an ESC adjudicator found that Plaintiff was not disqualified for benefits. See Attachment 1, Decision of Adjudicator. Following this determination, Duke filed with the ESC an appeal of the adjudicator's decision. See Attachment

2

2, <u>Duke Appeal From Adjudicator Decision</u>. In this document, Duke states: "Please accept this letter as Duke University's notice of appeal from the Adjudicator's decision in this matter." <u>Id</u>. The ESC accepted Duke's appeal and set a hearing date. <u>See</u> Attachment 3, <u>ESC Acknowledgement Of Appeal And Notice of Evidentiary Hearing</u>.

Subsequently, an evidentiary hearing was held before an ESC Appeals Referee on Duke's appeal from the adjudicator decision. Duke appeared for the hearing and presented testimony through three witnesses. <u>See</u> Attachment 4, <u>Decision of ESC Appeals Referee,</u> Paragraph 2. The ESC Appeals Referee's written decision held that Plaintiff was not disqualified for employment benefits

On Plaintiff's EEOC charge, Plaintiff duly received a right to sue letter and then duly filed this action in the Superior Court of Wake County North Carolina. Duke timely removed the action to this Court and now seeks either a stay for arbitration of Plaintiff's Title VII claims or dismissal of the action.

## B. Documentary Evidence For Duke's Motion

The only document Plaintiff *signed* in relevant relation to her employment at Duke was "Candidate Certification" form ("Certification Form"), a copy of which is attached and incorporated by reference as Attachment 5. The Certification Form is described by its own (i.e., Duke's) terms as an "expression of interest in employment." <u>Id</u>. In this Certification Form, Plaintiff authorized Duke to undertake certain basic employment-related ministerial functions such as checking references, arranging electronic payroll, and the like.

As Duke itself argues, the pertinent portion of the Certification Form is:

> *I hereby agree that any dispute or controversy arising out of or related to my employment or termination by Duke University or Duke University Health System, including any claim based in whole or in part on federal, state, or local*

3

*laws, whether statutory or common law, shall be subject to final and binding arbitration through the applicable grievance or dispute resolution procedure, as may be periodically amended and which is available upon request from the Department of Human Resources.*

Id.

Though Duke makes repeated reference to the so-called "DRP," or Dispute Resolution Procedure, the Certification Form does not make reference to the DRP by name, nor does it state that the DRP (as opposed to some other policy) specifically is applicable to Plaintiff's case. Instead, again without further identification, the form merely refers to, "the applicable grievance or dispute resolution procedure." Id.

Nowhere in the Certification Form does it state that *Duke*, as opposed to Plaintiff, agrees to arbitration of employment disputes. In fact, upon review of the Certification Form according to its terms, Duke is not actually agreeing or committing to anything. Duke does not agree to offer Plaintiff employment through the Certification Form; indeed, in addition to its previously referenced description as an "expression of interest" in employment with Duke, the Certification Form makes clear in its opening sentence that the information in the form is "subject to validation by Duke/Duke University Health System."

And, critically, whatever Duke policy is referenced in the Certification (i.e., whether the DRP or some other policy), the Certification Form makes clear that this policy or policies are subject to being "periodically amended" by Duke. It is this Certification Form again, that forms the documentary basis of Duke's claim to binding arbitration in this case.[1]

---

[1] Duke has not produced a copy of any other forms or policies signed or otherwise acknowledged by Plaintiff. – including a copy of the so-called "DRP."

4

# ARGUMENT

## A. Introduction

Plaintiff concedes for the purposes of this motion that Duke has been repeatedly held to have involvement in interstate commerce, and Plaintiff finds no cases (unpublished or otherwise) holding to the contrary. Thus, again as Duke itself argues, the pertinent question for the Court here is whether the Certification Form constitutes an enforceable arbitration agreement under "general principles of contract law." See Duke Memorandum, p. 5.

In fact, as the pertinent authority makes clear, the precise question is: *Is the Certification Form an enforceable arbitration agreement under North Carolina contract law?* "While North Carolina law favors arbitration, 'the underlying agreement must first be shown to be valid as determined by a common law contract analysis'." Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 118, 516 S.E.2d 879, 881 (1999). Most importantly for the present case, a valid contract "requires offer, acceptance, consideration **and no defenses to formation**." Koltis v. North Carolina Dep't Human Res., 125 N.C. App. 268, 271, 480 S.E.2d 702, 704 (1997) [counsel emphasis]. It is essential to the formation of any contract that there be "mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." Creech v. Melnik, 347 N.C. 520, 527, 495 S.E.2d 907, 911-12 (1998) (quoting Snyder v. Freeman, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980)).

The proper analysis, then, involves (a) ruling on the issue of whether the Certification Form constitutes a valid contract under North Carolina law, and (b) if so, whether Duke is entitled to enforce that contract against the Plaintiff here.

### B. The Certification Form "Contract" Is Illusory

Duke cites <u>Solomon v. Duke University</u>, 850 F. Supp. 372 (M.D.N.C. 1993), along with a string of attached unpublished (and therefore not binding) memorandum opinions and court orders, to support that contention that the Certification Form creates a binding agreement to arbitrate. The plaintiff in <u>Solomon</u>, though, voluntarily submitted to arbitration, and the opinion thus says nothing about forcing a plaintiff to arbitration under this form.

However, Duke also submits the unpublished <u>Armstrong v. Duke University, The Fuqua School of Business</u>, 2006 W.L. 213952 (M.D.N.C.) in support of its claims that Plaintiff's case must be arbitrated. <u>Armstrong</u>, though again not binding authority on this Court, involved precisely the same language as at issue here in the Certification Form, and the Middle District in that case held that Duke was indeed entitled to a stay pending completion of arbitration.[2] In fact, <u>Armstrong</u> features a declaration in support of Duke's motion from one Denise Evans, Director of Staff Relations at Duke, precisely as this case.

<u>Armstrong</u> discusses and rejects a number of complaints from a *pro se* plaintiff about the Certification Form. What <u>Armstrong</u> did not discuss, though, is the critical provision in the actual Certification Form itself making clear that employment and termination disputes are subject to "final and binding disputes" through the policy (though not identified, presumably the DRP) "*…as may be periodically amended.*"

It is this statement, not discussed in <u>Armstrong</u> that creates the first fatal flaw in Duke's argument: A policy mandating arbitration that may be freely amended (and the Certification Form places absolutely no restrictions on the manner in which Duke may amend the policy) allows Duke to avoid arbitration, on circumstances that suits its preferences, by simply amended

---

[2] Though not a dismissal, as Duke seeks here.

the policy. In fact, the "periodic amendment" permits Duke to alter the terms and conditions of this "contract" whenever it wishes – though that option, of course, is denied to the Plaintiff.

In short, Duke premises its motion on an illusory promise. Though there is no apparent consideration on Duke's part in the Certification Form (again: what, precisely, does the Certification Form bind Duke to do or refrain from doing?), even consideration does exist: "Consideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract." See, e.g., Kadis v. Britt, 224 N.C. 154, 163, 29 S.E.2d 543, 548 (1944) "A consideration cannot be constituted out of something that is given and taken in the same breath - of an employment which need not last longer than the ink is dry upon the signature of the employee." Wilmar, Inc. v. Liles, 13 N.C. App. 71, 78-79, 185 S.E.2d 278, 283 (1971); cert. denied, 280 N.C. 305, 186 S.E.2d 178, 208 N.C. 305 (1972); McLamb v. T.P. Inc., 173 N.C. App. 586, 591 (N.C. Ct. App. 2005).

And while this Court should look at the four corners of the Certification Form itself, see Robbins v. C.W. Meyers Trading Post, 253 N.C. 474, 117 S.E2d 438 (1960), to determine the rights (if any) held by each party under this purported "contract," the DPR itself as submitted by Duke contains no provision contradicting Duke's unfettered right to alter the terms of the DUP as set forth in the Certification Form.[3]

The very document under which Duke claims a right to proceed to arbitration, then, is unenforceable as an illusory promise. As such, it cannot serve as a vehicle to compel arbitration of Plaintiff's claims.

---

[3] While the "policy statement" in the first paragraph of the DRP states that "Both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within its scope," there is no language rescinding or contradicting Duke's right, as set forth in the Certification Form, to amend the policy – including amending it to remove this obligation in its entirety. Perhaps this is why Duke states in its Motion that both parties are required to submit to binding arbitration – yet provides neither quoted language nor specific text of the DRP to support this claim.

7

**C. To The Extent The "Certification Form" Is A Valid Agreement To Arbitrate, Duke Has Waived This Right Against Plaintiff**

In its Memorandum, Duke quotes the Certification Form:

> *The DRP's procedures apply to **any claim based in whole or in part on federal, state, or local laws whether statutory or common law, including any claim arising out of or relating to employment policies**. .. Given this broad language, the claims at issue here clearly are subject to mandatory arbitration.*

Duke Memorandum, p. 9. And indeed, that is what the Certification Form says: *any claim based in whole or in part on federal, state, or local laws, whether statutory or common law.*

Given this language, then, it is a mystery as to why, when Plaintiff initially filed a claim for unemployment benefits – a claim based wholly on North Carolina statutes, specifically N.C.G.S. Chapter 96 – Duke made no argument either to Plaintiff or the ESC that Plaintiff's claims against Duke in that context were subject to mandatory arbitration. Nothing appears in the language of Chapter 96 itself that would have precluded Duke from making such an argument.

And as noted, Duke not only failed to claim a right to arbitration upon Plaintiff's claim for unemployment benefits, but also specifically appealed, through the appeals process of the ESC, the initial award of the adjudicator finding that Plaintiff was entitled to unemployment benefits.

It would be one thing, perhaps, if Duke had merely reacted to an *initial* unemployment benefits filing by the Plaintiff. However, Duke also, as shown by the referenced attachment, *sought relief* of the initial decision via an appeal: *"Please accept this letter as Duke University's notice of appeal from the Adjudicator's decision in this matter."* See Attachment 2. Moreover, at no point during the appeals process did Duke claim a lack of jurisdiction, a right to arbitration,

8

or any other claim similar to the ones it propounds here. Instead, Duke appeared at and participated in the appeals hearing, giving evidentiary testimony from no fewer than three witnesses. See Attachment 4, Paragraph 2.

These actions were inconsistent, to put it mildly, with Duke's present claim that **all employment related claims and disputes** must be submitted to binding arbitration. In fact, it is hard to identify a claim more directly associated with employment than a claim for unemployment benefits against an employer by a former employee. And yet, when presented with a situation that unquestionably involved employment claims and disputes, Duke said nothing about a claimed right to arbitration and, as noted, sought relief through the appeals process.

Such an inconsistent action leads to but one conclusion: to the extent Duke may have had a right to claim arbitration under the (illusory) contract at issue in this case, it waived that right due to its abandonment of it in a prior proceeding dealing with employment claims by precisely the same former employee – Plaintiff.

"Waiver has been defined as 'an intentional relinquishment of a known right'. A person *sui juris* may waive practically any right he has unless forbidden by law or public policy." Wachovia Bank & Trust Company v. Rubish, 306 N.C. 417, 293 S.E.2d 749 (1982); rehearing denied, 306 N.C. 753, 302 S.E.2d 884 (1982). The Rubish Court continued: "The term, therefore [waiver] covers every conceivable right – those relating to procedure and remedy as well as those connected with the substantial subject of contracts." Id.

As the Court of Appeals has stated, "The essential elements of waiver are the existence at the time of the alleged waiver of a right, advantage or benefit, the knowledge, actual or constructive, of the existence thereof, and an intention to relinquish such right, advantage or

9

Case 5:09-cv-00008-FL   Document 11   Filed 02/16/09   Page 9 of 12

benefit." Long Drive Apartments v. Parker, 107 N.C. App. 724, 729, 421 S.E.2d 631, 633 (1992).

Here, thanks to Duke's own filings, we have proof of Duke's *actual* knowledge of and assertion of the claimed right to arbitration, under the same document, well before Plaintiff filed her claim for unemployment benefits. Duke has attached to its present filings not only *previous decisions* seeking to enforce this same "contract" but also a declaration from the same person, Denise Evans, who supported its claims of a right to arbitration in an earlier case.

And, of course, we have a specific course of conduct by Duke (see Long Drive), involving employment-related claims by the Plaintiff, relinquishing any claimed right to arbitration not only by participating in the unemployment adjudication procedure but in filing an appeal and participating in an evidentiary hearing. A course of conduct less consistent with claiming a right to arbitration for *all employment-related claims* could scarcely be imagined.[4]

Duke, then, essentially argues to this Court that it is entitled to an order compelling arbitration not only on the basis of an illusory promise, but also on the premise that it may pick and choose which employment-related disputes it will arbitrate – despite citing language that *all* such disputes must be arbitrated. Under such circumstances, little more need be said: Duke has waived its right to compel arbitration against claims by this Plaintiff.

## CONCLUSION

Duke premises its claims to a right of binding arbitration on an illusory contractual agreement that it was free to amend at any time it wished. Duke then through its own filings shows that it waived any right it might have otherwise had to arbitration under the terms of that

---

[4] Plaintiff notes that the unemployment benefits context is not the only conduct by Duke that raises the question of waiver. There is no evidence, or at least Duke provides none, that Duke so much as raised the question of arbitration of employment-related disputes throughout the EEOC charge process.

10

purported contract, even if it was not illusory. Duke, far from demonstrating that Plaintiff's claims must be dismissed – for which is provides, as far as Plaintiff can ascertain, no applicable precedent – fails to demonstrate even that it has a right to a stay pending arbitration. Under these circumstances, Duke's motion must be denied.

This the 16th day of February, 2009.

**LAW OFFICES OF MICHAEL C. BYRNE, PC**

By: /s/ Michael C. Byrne
Michael C. Byrne
Wachovia Capitol Center, Suite 1130
150 Fayetteville Street
Raleigh, NC 27601
Tel: (919) 865-2572
NC Bar # 22690

**CERTIFICATE OF SERVICE**

The undersigned has this day served a copy of Plaintiff's Response to Motion and Proposed Order upon the Defendant via electronic filing, which will send the relevant documents to:

C. Matthew Keen
Ogletree Deakins Nash Smoak and Stewart, PC
2301 Sugar Bush Road Suite 600
Raleigh, NC 27612

This the 16th day of February, 2009.

By: /s/ Michael C. Byrne
Michael C. Byrne

11

Case 5:09-cv-00008-FL   Document 11   Filed 02/16/09   Page 11 of 12

Rehearing denied by:

  Wachovia Bank v. Rubish, 306 N.C. 753, 302 S.E.2d 884, 1982 N.C. LEXIS 1798 (1982)

our courts have held that (holding that a profit sharing plan was illusory consideration in return for a covenant not to compete where, inter alia, it was drawn up by the employer, was subject to amendment by the employer, and was amended by employer to reduce, and for a period of two years eliminate, contributions to the plan), cert. denied, 280 N.C. 305, 186 S.E.2d 178, 208 N.C. 305 (1972).