IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-8-FL

| | |
|---|---|
| RASHIDAH H. ABDULLAH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) MEMORANDUM & RECOMMENDATION |
| DUKE UNIVERSITY HEALTH SYSTEM, INC., | ) ) ) ) |
| Defendant. | ) ) |

This matter comes before the court on Defendant Duke University Health System Inc.'s ("DUHS") motion to compel arbitration or, in the alternative, to dismiss the complaint for lack of subject matter jurisdiction. [DE-3]. Plaintiff Rashidah H. Abdullah has responded, [DE-11], and DUHS has replied, [DE-12]. Accordingly, this matter is ripe for review.

## STATEMENT OF THE CASE

In October 2004, Abdullah, an African American female of the Muslim religious faith, began working for DUHS as a casual duty nurse. DUHS terminated her employment in March 2008. Abdullah alleges that she was fired because of her race and religion. Abdullah was not subject to a collective bargaining agreement with a union while working at DUHS. However, she signed a form entitled the "Candidate Certification" form when she applied for employment with DUHS. One provision of the form states:

> I hereby agree that any dispute or controversy arising out of or related to my employment or termination by Duke University or Duke University Health

1

> System, including any claim based in whole or in part on federal, state, or local laws, whether statutory or common law, shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure, as may be periodically amended and which is available upon request from the department of Human Resources.

Evans Decl.. Ex. B., Def. Mot. to Compel. DUHS's dispute resolution procedure, entitled "Dispute Resolution Procedure" ("DRP") requires all "employees who are not subject to the terms of a collective bargaining agreement with a labor union to agree to resolve any disputes concerning their employment or termination from employment through a private dispute resolution procedure, which includes binding arbitration." Evans Decl. ¶ 2, Def. Mot. to Compel. The DRP is widely distributed among DUHS employees and a current copy is always available on-line or from the department of Human Resources. Evans Decl. ¶ 3.

Following her termination, Abdullah filed a claim for unemployment benefits with the Employment Security Commission of North Carolina ("ESC") and also filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

On December 9, 2008, Abdullah filed a complaint in the Superior Court of Wake County, North Carolina, alleging claims of employment discrimination against DUHS under Title VII and state law. On January 8, 2009, DUHS removed Abdullah's complaint to this court.

## DISCUSSION

The Federal Arbitration Act ("FAA") governs the resolution of private disputes through arbitration. 9 U.S.C. § 1 et seq. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a

2

Case 5:09-cv-00008-FL   Document 14   Filed 05/22/09   Page 2 of 9

> transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9. U.S.C. § 2. Courts must compel arbitration when a valid arbitration agreement exists because the FAA's provisions are mandatory. See 9 U.S.C. § 2; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced. . . ."). In order to compel arbitration under the FAA, a party must show: (1) that a dispute between the parties exists, (2) that a contract between the parties includes an arbitration provision which would seem to cover the dispute, (3) that the contract or transaction at issue involves interstate or foreign commerce, and (4) that one party refuses to arbitrate the dispute. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 500-01 (4th Cir. 2002).

There is no question that the first and last elements of the test are satisfied, a dispute between Abdullah and DUHS exists, and Abdullah refuses voluntarily to submit to arbitration. In addition, both parties agree that the contract between Abdullah and DUHS involves interstate commerce because DUHS treats patients from all over the country and the world, it receives payments from individuals and entities other than North Carolina residents, and its employees travel outside of North Carolina to perform work. Def. Mem at 5-6; Pl. Resp. at 5; see also St. Clair v. Duke Univ. And Duke Univ. Med. Ctr., No 5:99-CV-127-BO2, 1999 WL 19139975, at *1 (E.D.N.C. May 14, 1999) (noting that "Duke is engaged in interstate commerce

3

in its provision of medical and educational services, and an employment contract between Duke and one of its employees involves commerce under the FAA") (internal quotes omitted).

Accordingly, the only issue for the court to resolve is whether an enforceable arbitration agreement exists between the parties. Whether a party agreed to arbitrate a dispute is a matter of state law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Generally, North Carolina has a strong public policy that favors arbitration, however the party seeking to compel arbitration must show that the underlying agreement was valid based on a common law contract analysis. Howard v. Oakwood Homes Corp., 134 N.C. App. 116, 118 (1999). Abdullah claims (1) that the Candidate Certification form, in which Abdullah agreed to arbitrate any disputes arising from her employment with DUHS, does not constitute a valid contract under North Carolina law and (2) that DUHS waived its right to enforce the contract against Abdullah, if in fact, the contract is viable.

A. Candidate Certification Form is a valid and enforceable contract

Abdullah argues that the Candidate Certification form does not create a binding agreement to arbitrate between the parties because it states that disputes "shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure, as may be periodically amended." The applicable dispute resolution procedure is the DRP that is made available to all DUHS employees. Abdullah argues that there is no consideration on the part of DUHS to engage in arbitration in conformity with the DRP because the ability of DUHS to amend the DRP creates an illusory promise, which does not require DUHS to

4

arbitrate at all.

However, the DRP document states that "both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within its scope." Evans Decl. Ex. A., Def. Mot. to Compel. Generally, an employer's promise to arbitrate certain claims is sufficient to act as consideration under the FAA. Adkins, 303 F.3d at 501. "Because no consideration is required above and beyond the agreement to be bound by the arbitration process for any claims brought by the employee, . . . [Defendant's] promise to arbitrate its own claims is a fortiori adequate consideration for this agreement." Id. (internal quotations omitted).

Nonetheless, Abdullah asserts that because the DRP document states that it "may be periodically amended," Defendant's promise to arbitrate claims is illusory. North Carolina courts appear not to have addressed the issue of whether an arbitration agreement that includes a provision that allows one of the parties to amend the dispute resolution procedure, constitutes an illusory promise. However, the Fourth Circuit, in deciding a case under West Virginia law, rejected a party's argument that the arbitration agreement was illusory because the plaintiff could amend the terms or discontinue the program at its discretion. American General Life and Acc. Ins. Co. v. Wood, 429 F.3d 83, 91n.5 (4th Cir. 2005). In addition, in another case decided by the Fourth Circuit applying Maryland law, the court concluded that adequate consideration existed because the arbitration agreement required both employer and employee to arbitrate employment related claims, even though the policy enabled the employer to amend the program at its complete discretion. See Hill v. Peoplesoft USA, Inc., 412 F.3d 540, 543-44 (4th Cir. 2005).

5

Under North Carolina law, "[c]onsideration which may be withdrawn on a whim is illusory consideration which is insufficient to support a contract." Kadis v. Britt, 224 N.C. 154, 163 (1944). Nonetheless, the fact that the DRP explicitly states that "[b]oth the staff member and Duke are required to utilize this procedure to resolve disagreements falling within its scope," suggests that DUHS may not avoid the dispute resolution process by altering the terms of the DRP so that it is no longer bound by it. Moreover, a North Carolina District Court has determined that the same DRP at issue in this case included a valid arbitration agreement when the plaintiff signed the Candidate Certification form. See Armstrong v. Duke University, No. 1:04CV01206, 2006 WL 213952, at *3-4 (M.D.N.C. Jan 27, 2006) (granting Duke University's motion to stay and compel arbitration because when the plaintiff signed the "Applicant's Certification" form, he agreed that any dispute arising out his employment with Duke would be addressed through the dispute resolution procedure).

Finally, the fact that Abdullah signed the Certification Form, but not the DRP document, does not affect the binding nature of the agreement to arbitrate. See Hightower v. GMRI, Inc., 272 F.3d 239, 242-43 (4th Cir. 2001) (reversing the judgment of the district court and compelling arbitration because although the plaintiff did not sign the dispute resolution document, he did sign a document acknowledging receipt of the dispute resolution materials). Accordingly, it is the court's opinion that the DRP is binding on both Abdullah and DUHS.

B. <u>DUHS Did Not Waive its Right to Enforce the Contract</u>

Abdullah also argues that DUHS waived its right to enforce the contract because when Abdullah filed a claim for unemployment benefits with the Employment Security Commission of North Carolina ("ESC"), DUHS made no argument either to Abdullah or the ESC that Abdullah's claims were subject to mandatory arbitration. The ESC found that Abdullah was entitled to unemployment benefits, and DUHS appealed, which, Abdullah argues, is further evidence of DUHS's waiver of its right to arbitrate.

However, a claim filed with an administrative agency presents a different situation than a suit filed between employee and employer. See Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 15-16 (1st Cir. 2005). The Supreme Court has held that an employer cannot limit the EEOC, a third party, from bringing a public enforcement action against an employee by invoking an arbitration agreement between the employer and employee. EEOC v. Waffle House, Inc., 534 U.S. 279, 297-98 (2002). This rationale has been applied in cases where one party claims that a waiver of an arbitration agreement has occurred because of the failure of the party invoking the arbitration clause to raise the issue during an administrative proceeding. See Marie, 402 F.3d at 15-16 (rejecting the argument that a party, by failing to file for arbitration during the pendency of EEOC proceedings, waived the right to enforce the arbitration agreement in a later suit). The reason for the lack of waiver is that the administrative agency is not a party to the arbitration agreement, and therefore cannot be bound by it, which would make asserting the right futile. Marie, 402 F.3d at 15.

Here, Plaintiff filed a claim with the ESC requesting unemployment benefits.

7

Case 5:09-cv-00008-FL   Document 14   Filed 05/22/09   Page 7 of 9

The ESC has the authority to investigate, hold hearings, and award benefits paid from taxes collected by the ESC. See N.C. Gen. Stat. §§ 96-4 & 96-15. Just as in the cases dealing with the EEOC, the ESC is not a party to the agreement between Abdullah and DUHS. DUHS could not limit the ESC, a third party, from considering Abdullah's claim for unemployment benefits by invoking an arbitration agreement between itself and Abdullah.

Federal policy favors arbitration. Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983) (noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Moreover, because of this strong federal policy, courts "will not lightly infer the circumstances constituting waiver [of the right to arbitration]." American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 95 (4th Cir. 1996). Accordingly, it is the court's opinion that no such waiver occurred.

### C. Stay of Proceedings Pending Arbitration is Appropriate

The FAA provides that when a proceeding is subject to an arbitration agreement, a stay of the action is appropriate:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (emphasis added). Accordingly, the court recommends that the case be stayed until the conclusion of arbitration proceedings. See Armstrong, 2006 WL 213952, at *6 (staying the proceedings in the district court until the completion of the

8

arbitration proceedings).

## CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that DUHS' motion to stay and compel arbitration be **GRANTED**. [DE-3].

This 22nd day of May 2009.

DAVID W. DANIEL
United States Magistrate Judge